IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BENFIELD ELECTRIC CO., INC. | * | |
| v. | * | Case No.: 1:09-cv-2071 |
| KEYBANK, NATIONAL ASSOCIATION | * | |

*****

OPINION

Benfield Electric Co., Inc. ("Benfield") filed a complaint in the Circuit Court for Harford County, Maryland on May 11, 2009 against KeyBank National Association ("KeyBank"). On August 6, 2009, KeyBank removed the action to this Court pursuant to 28 U.S.C. §§ 1332(a)(1), 1441(a), and 1446(a). Benfield's claims stem from allegedly uncompensated services it rendered during the construction of a residential Project located in Bel Air, Maryland owned by R & L Livezey, LLC ("Livezey"). KeyBank provided the financing for the project. In his complaint against KeyBank, Benfield asserts claims for an equitable lien against the property, a declaratory judgment of his legal rights with respect to KeyBank, and the imposition of a constructive trust. Now pending before the Court is KeyBank's Motion to Dismiss Benfield's Complaint under Fed. R. Civ. P. 12(b)(7) for failure to join a necessary party, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, I will dismiss Count I of Benfield's Complaint pursuant to Rule 12(b)(7) and remand the claim asserted in this count to the Circuit Court of Harford County, Maryland. I will dismiss Counts II-V pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted.

**Statement of Facts**[1]

Benfield was a subcontractor on a residential development Project known as McPhail Woods Condominium Phase 1 ("the Project"). (Pl.'s Complaint ("Pl.'s Compl.") at ¶3.) Benfield contracted with the general contractor, Altieri Homes Inc., ("Homes") for the installation of electrical services. (*Id.* at ¶5.) Livezey owns the Project. (*Id.* at ¶3.) KeyBank provided the financing and has a first priority lien on the Project. (*Id.* at ¶4.)

According to Benfield, as of January 2008, Homes and Livezey owed Benfield $115,127.03 for services rendered. (*Id.* at ¶6.) Because Benfield had not been paid, it gave notice of its intent to file a mechanic's lien on the Project. (*Id.* at ¶7.) Benfield never filed the lien. On January 25, 2008, KeyBank sent a letter to Benfield ("Authorization Letter") acknowledging Livezey's debt and authorizing "direct payment of $4,667.00 from settlement to third party purchasers of each of the remaining 30 units in the building" to satisfy the debt. (*Id.* at ¶9; Exhibit 2.) On January 29, 2008, Livezey and Benfield executed a promissory note for $115,127.03 and entered into an assignment agreement ("the Assignment") granting Benfield $4,667.00 at the closing for each condominium unit sold in the Project. (Pl.'s Compl. at ¶10; Exhibit 3.)

As of the commencement of this action, Livezey had defaulted under the promissory note. Livezey had paid Benfield $32,669.00, Benfield's pro rata share from the sale of 7 condominiums. $82,458.03 in principal remains outstanding on the debt between Livezey and Benfield. (Pl.'s Compl. at ¶13.) Livezey is also in "continuing default" on its debt to KeyBank. (*Id.* at ¶12.) On April 28, 2009, KeyBank sent a letter to Benfield indicating its position that if it elects to foreclose against the unsold units in the Project, KeyBank will have no further

---

[1] *See* Benfield's Complaint ("Pl.'s Compl.").

obligation to Benfield regarding the satisfaction of Livezey's debt through pro rata payments from the proceeds of condominium sales. (*Id.*) Subsequently, Benfield commenced this action against KeyBank to secure full payment of the services it rendered in the construction of the Project.

## Standards of Review

### A.

Fed. R. Civ. P. (12)(b)(7) permits a party to file a motion to dismiss for failure to join a necessary party under Fed. R. Civ. P. 19. There is a two step inquiry under a Rule 12(b)(7) motion. *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). First, this Court must determine whether the party is necessary to the action pursuant to Rule 19(a), which dictates that the party be joined if "in the person's absence complete relief cannot be accorded among those already parties."[2] Fed. R. Civ. P. 19(a)(1). The inquiry under Rule 19(a) "is a practical one, and is addressed to the sound discretion of the court." *Heinrich v. Goodyear Tire & Rubber Co.,* 532 F. Supp. 1348, 1359 (D. Md. 1982) (citing *Coastal Modular Corp. v. Laminators, Inc.,* 635 F.2d 1102, 1108 (4th Cir. 1980)). Second, if this Court concludes that the absent party is necessary but joinder would destroy diversity, this Court must consider whether the party is indispensable pursuant to Rule 19(b). *See Owens-Illinois, Inc.*, 186 F.3d 440. If the party is indispensable, the case must be dismissed. In determining whether a party is indispensable, the Court will consider four factors: 1) the extent a judgment rendered would be prejudicial to the absent or existing parties; 2) whether relief can be shaped to lessen or avoid

---

[2] Fed. R. Civ. P. 19(a)(2) dictates that a party be joined if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." However, in the instant case, a non party has not claimed an interest in this action.

any prejudice; 3) whether a judgment will be adequate; and 4) whether the plaintiff will have an adequate remedy if the action is dismissed. *See* Fed. R. Civ. P. (19)(B). This decision requires the Court to consider the equities of the particular factual setting presented. *See Schlumberger Indus. Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir. 1994); *Provident Tradesmens Bank &Trust Co. v. Patterson*, 390 U.S. 102, 119 (1968) ("The decision whether to dismiss . . . must be based on factors varying with the different cases").

**B.**

The purpose of a Rule 12(b)(6) motion "is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but it demands more than an unadorned accusation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers no more than "a formulaic recitation of the elements of a cause of action" is insufficient. To overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient facts to "state a claim for relief that is plausible on its face." *Id*. at 570. Therefore, the facts pled must permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556.

Rule 12(b)(6) permits a party to file a motion to dismiss when the complaint fails to state a claim upon which relief can be granted. "[I]mportantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards*, 178 F.3d at 243 (internal quotation marks and alterations omitted). In evaluating a motion to dismiss under Rule 12(b)(6), a court should consider as true those facts that are

properly pled in the plaintiff's complaint and construe reasonable inferences in the light most favorable to the plaintiff.  *See Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  However, the court is not required to accept unsupported legal allegations.  *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Nor is the court required to accept unwarranted inferences, or unreasonable conclusions or arguments.  *See E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  In addition to considering the complaint, a court may also consider any documents that are attached to it as well as any document the defendant has attached to its motion to dismiss as long as it is integral to the complaint and authentic.  *See Trimble Navigation Ltd.*, 484 F.3d at 705, 706.  "[I]n the event of conflict between the bare allegations of the complaint and any exhibited attached . . . the exhibit prevails."  *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see also Jeffrey M. Brown Assoc., Inc. v. Rockville Town Center, Inc.*, 7 Fed. Appx. 197, 202 (4th Cir. 2001) (Courts are also not required to credit "conclusory allegations in the complaint that are contradicted by the attachments.").

**Discussion**

Benfield argues for relief against KeyBank on three separate grounds.  Benfield seeks: 1) an equitable lien on the Project; 2) a declaratory judgment with respect to the rights and liabilities of the parties under the Authorization Letter and the Assignment; and 3) a constructive trust on the proceeds of the sale of the remaining units in the Project by KeyBank following a foreclosure.

**A.**

Benfield's claim for an equitable lien against the Project must be remanded to the Circuit Court of Maryland under Rule 12(b)(7) because the owner, Livezey, is a necessary and indispensable party to this claim and cannot be joined without destroying diversity jurisdiction.[3] Under Maryland Law, an equitable lien lies against property. It is "a right given by contract, statute or rule of law to have a debt or charge satisfied out of a particular property." *Chevy Chase Bank v. Chaires*, 715 A.2d 199, 206 (Md. 1998); *see also Equitable Trust Co. v. Imbesi*, 412 A.2d 96, 99 (1980) ("An equitable lien is based on specific enforcement of a contract to assign property as security."). Benfield contends that there is no need for Livezey to be joined because it already consented to an equitable lien through the execution of the Assignment. (Pl.'s Opp. to Def.'s Mot. to Dismiss ("Pl.'s Mem.") at 9.) While Benfield may be correct that Livezey would not oppose an equitable lien, granting Benfield a right to a security interest in Livezey's property without granting Livezy the opportunity to be heard would be prejudicial to Livezey. However, Joinder is not possible in the instant case as Livezey is a Maryland limited liability company. (*See* Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 8.) Because Benfield is also a citizen of Maryland, joinder would destroy complete diversity between the parties, depriving this court of subject matter jurisdiction. *See* 28 U.S.C. § 1332(a)(1). Therefore, Benfield's claim for an equitable lien on the Project will be remanded to the Circuit Court of Maryland pursuant to 28 U.S.C. § 1447(c).[4]

**B.**

---

[3] Neither party has suggested that Benfield is prevented from pursuing this claim in state court.
[4] Because Livezey is not a necessary party to the claims asserted in Counts II through IV, arguably the claims asserted in those counts should not be remanded to the Circuit Court for Harford County under 28 U.S. C. § 1447(c). Therefore, although those counts raise questions of state rather than federal law, I am ruling on (and granting) KeyBank's motion to dismiss those counts to avoid a potentially troublesome jurisdictional issue.

Benfield's claim for a declaratory judgment with respect to its rights and liabilities under the Authorization Letter and the Assignment is dismissed pursuant to 12(b)(6). Benfield claims that post foreclosure the "Authorization Letter and Assignment give it the right to receive a pro rata share of the proceeds of settlement of each of the remaining condominium units to compensate it for the labor and material that it contributed to the development of the Project." (Pl.'s Compl. at ¶25.) However, the plain language of Benfield's exhibits contradicts this conclusory allegation.

In the Authorization Letter, KeyBank authorizes "direct payments of $4,667.00 from settlement to third party purchasers . . . [that] will come directly from the title company to your firm." (Pl.'s Compl., Ex. 2.) Nothing in the agreement provides that KeyBank will assume Livezey's obligation. Nor is there any indication that KeyBank is relinquishing its first priority lien on the Project. Furthermore, the letter authorizes of payments from settlement to third parties, not settlement with any party. If KeyBank were to purchase the property at a foreclosure sale, it would not be a "third party" purchaser. The language of the letter notwithstanding, Benfield maintains that the letter entitles him to continued payments from sales to any party following a foreclosure. However, "in the event of conflict between the allegations of the complaint and any exhibit attached . . . the exhibit prevails." *See Fayetteville Investors*, 936 F.2d at 1465. In light of the Authorization Letter, Benfield's allegations are mere conclusions unsupported by facts. *See Twombly*, 550 U.S. at 555.

Benfield also claims that the Assignment grants it an interest in the proceeds of the Project following a foreclosure. (*See* Pl.'s Compl. at ¶24, Ex. 3.) However, the Assignment is an agreement between Benfield and Livezey. KeyBank is not a party to the agreement.

Nowhere in the complaint does Benfield plead sufficient facts to permit a reasonable inference that KeyBank is bound by the agreement.

Benfield seems to suggest that the Authorization Letter induced it to execute the Assignment; therefore KeyBank should be bound by its terms. (Pl.'s Compl. at ¶10.) However, Benfield has failed to plead facts to support this allegation. The Authorization Letter contains no mention of an intention to adopt the Assignment, nor any reference to KeyBank's first priority lien. (Pl.'s Compl., Ex. 2 and 3.) Benfield also claims that it is entitled to proceeds after foreclosure because the Assignment states that "Assignment of proceeds is duly authorized by all lien creditors who have a right to claim any lien of any nature whatsoever." (Pl.'s Compl., Ex. 3.) Even if this language could be fairly read to grant Benfield the relief it seeks, Benfield has still failed to plead sufficient facts to support a reasonable claim that KeyBank, a non party to the Assignment, is bound by its provisions. As with Benfield's claim regarding the Authorization Letter, the factual exhibits attached to the complaint directly contradict Benfield's legal allegations.

## C.

Finally, Benfield's claims for a constructive trust are dismissed because Benfield has failed to plead sufficient facts that could lead this Court to reasonably conclude that there are equitable grounds to grant Benfield relief. A constructive trust is imposed by equity upon property "which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Hartsock v. Strong*, 318 A.2d 237, 240 (Md. Ct. Spec. App. 1974). As Benfield notes, fraud is not required for the imposition of a constructive trust; "[i]t is enough that the conscience of a court of equity would be traumatized if the legal title holder were allowed to deprive the beneficial owner of that which in

good conscience belongs to the beneficial owner." *Id.* at 241.  However, a constructive trust is not a mechanism to correct every perceived injustice.  *See Wimmer v. Wimmer*, 414 A.2d 1254 1261 (Md. 1980) ("[A] court of equity will not deprive one person of property titled in his name and give it to another merely because the latter believes herself to be deserving of it."). Therefore, a precondition to a constructive trust is a "good equitable claim." *Id*. at 671, 1259.

Benfield has pled insufficient facts for this court to reasonably conclude that equitable grounds for a constructive trust are present.  Benfield argues that it is entitled to a constructive trust because they were induced to sacrifice their right to file a mechanic's lien by the Authorization Letter and the Assignment. (*See* Pl.'s Compl. at ¶5, ¶10, ¶34.)  Accepting this allegation as true, Benfield still fails to plead sufficient facts to indicate the inequity in this result. Any mechanic's lien that could have been established by Benfield would have been subordinate to KeyBank's first priority lien.  *See Residential Indus. Loan Co., Inc. v. Weinberg*, 369 A.2d 563, 566 (Md. 1977) (concluding that a first mortgage has priority over an after filed mechanic's lien); *IA Constr. Corp. v. Carney*, 672 A.2d 650, 656 (Md. 1996) (construing Md. Real Prop. Code § 9-108 to provide that a senior foreclosure sale extinguishes a junior mechanic's lien). Therefore, KeyBank's foreclosure action would have wiped out any mechanic's lien Benfield asserted prior to the entry of the Authorization Letter or Assignment.  Indeed, had Benfield filed a mechanic's lien, KeyBank may have been induced to foreclose immediately and Benfield may never have received the $32,669.00 conveyed under the Assignment.  Benfield also claims that the equities are in its favor because the Assignment failed to confer the security interest promise by Livezey.  However, this allegation is unsupported by any factual assertions.  Specifically, Benfield fails to provide a reasonable basis to conclude that Livezey had authority to subordinate KeyBank's security interest.  Ultimately, Benfield fails to plead sufficient facts that could

9

reasonably permit this Court to conclude that it has an equitable claim to the proceeds of sales following foreclosure.

For the foregoing reasons, KeyBank's Motion to Dismiss is granted.  Count I of the Complaint is remanded to the Circuit Court of Harford County, Maryland.  Counts II-V are dismissed.  A separate order to that effect is being entered herewith.


DATE:  12/23/2009            __/s/_____
                             J. Frederick Motz
                             United States District Judge